ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EMMANUEL ORENGO CRUZ,<br><br>Peticionaria,<br><br>v.<br><br>ESTHER MARIE RODRÍGUEZ VELÁZQUEZ,<br><br>Recurrida. | KLAN202401098 | **APELACIÓN** *acogida como* **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de Ponce, Sala de Relaciones de Familia y Menores.<br><br>Civil núm.: PO2021RF00996.<br><br>Sobre: divorcio-ruptura irreparable. |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 17 de enero de 2025.

Comparece ante nos el peticionario, señor Emmanuel Orengo Cruz (señor Orengo), y nos solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 3 de octubre de 2024, notificada el 21 de octubre de 2024[1]. En dicho dictamen, el foro primario determinó la existencia de una deuda de pensión alimentaria a favor de sus hijos menores de edad y habidos en común con la parte recurrida, la señora Esther Marie Rodríguez Velázquez (señora Rodríguez). También, el tribunal impuso al peticionario un plan de pago para satisfacer una deuda pasada en concepto de pensión alimentaria.

Evaluada la petición de *certiorari* intitulada *Recurso de Apelación Civil*[2], y sin la comparecencia de la parte recurrida, expedimos el auto y confirmamos la determinación recurrida.

---

[1] La notificación emitida por la Secretaría del Tribunal de Primera Instancia, Región Judicial de Ponce, indica que la *Resolución* fue emitida el 17 de octubre de 2024. Revisado el caso en el *Sistema Unificado de Administración y Manejo de Casos* (SUMAC), surge claramente que no existe resolución alguna emitida el 17 de octubre de 2024, y que aparenta haber mediado un error en la notificación, pues la hoja correspondiente responde a la *Resolución* cuya revisión se solicita, la cual fuera suscrita el 3 de octubre de 2024.

[2] Se acogió el recurso como uno de *certiorari*, por ser lo procedente en Derecho. No obstante, se mantuvo la designación alfanumérica asignada por la Secretaría de este Tribunal.

Número identificador

SEN2025_____

I

El 12 de febrero de 2017, el señor Orengo y la señora Rodríguez contrajeron matrimonio[3]. Por desavenencias entre la pareja[4], el 10 de diciembre de 2021, el señor Orengo presentó una petición de divorcio por la causal de ruptura irreparable. Durante el matrimonio, la pareja procreó tres hijos[5]. En lo pertinente a este caso, el peticionario solicitó que la patria potestad y la custodia de los menores fuera compartida. En cuanto a la pensión alimentaria, solicitó que los gastos se compartieran en partes iguales.

En su contestación a la demanda[6], presentada el 28 de febrero de 2022, la señora Rodríguez expresó que no había comunicación entre las partes, por lo que se opuso a que se decretara la custodia compartida. También, sostuvo que existía una pensión fijada en la Administración para el Sustento de Menores (ASUME), con el número de caso 0595232, por la cantidad de $200.00 mensuales y que el señor Orengo mantenía una deuda en tal concepto[7].

El **17 de marzo de 2022**, el tribunal declaró con lugar la demanda de divorcio presentada por el peticionario. Mediante su *Sentencia*, el foro primario determinó los asuntos sobre la patria potestad, la custodia compartida y las relaciones filiales. También, declaró que el peticionario

---

[3] *Véase*, apéndice del recurso, a la pág. 28.

[4] *Íd.*, a las págs. 18-22, y 91-95. El 8 de noviembre de 2021, el señor Orengo solicitó la orden de protección OPA2021-017919 en contra de la señora Rodríguez. En cuanto a la pensión alimentaria, se impuso a la señora Rodríguez el pago quincenal de $100.00 a partir del 19 de noviembre de 2021, y, según lee la orden, "hasta que una Sala Superior del Tribunal Superior del Tribunal de Primera Instancia disponga algo distinto". También, se establecieron relaciones filiales provisionales y se dispuso que la recurrida solo interactuaría con sus hijos durante fines de semanas alternos.

[5] *Véase*, apéndice del recurso, a las págs. 24-31.

[6] *Íd.*, a las págs. 46-47.

[7] *Íd.*, a la pág. 44. Obra en el expediente una certificación de la ASUME del 28 de enero de 2022, en el caso 0595232, en la que se consigna que la señora Rodríguez no tenía la obligación de pagar pensión alimentaria y que recibía una pensión alimentaria a través de la ASUME. A continuación, presentamos el desglose tabulado según el documento:

| Caso | Pensión Fijada | Frecuencia de Pago | Fecha Último Pago | Balance adeudado | Plan de Pagos | Frecuencia Plan de Pagos | Fecha en que se estableció Plan de Pagos | Fecha último pago registrado del Plan de Pagos |
|---|---|---|---|---|---|---|---|---|
| 0595232 | $200.00 | MENSUAL | 12/24/2021 | $400.00 | $60.00 | MENSUAL | 12/20/2021 | 12/24/2021 |

consignaba en la ASUME una pensión alimentaria a favor de sus hijos por la cantidad de $200.00 mensuales, en el caso 0595232. La *Sentencia* fue notificada el 24 de marzo de 2022[8].

El 18 de abril de 2022, el señor Orengo solicitó al tribunal, por derecho propio, que se emitiera una orden de cierre del caso de pensión ante la ASUME, ya que la agencia le había requerido una orden judicial para poder ordenar tal cierre. Adicionalmente, suplicó la concesión de la custodia de los menores, pues estaba preocupado por los cuidados que recibían en el hogar de la parte recurrida[9].

Mediante la *Orden* emitida y notificada el 27 de abril de 2022, el tribunal remitió al peticionario a la determinación del 17 de marzo de 2022[10].

Por otro lado, la señora Rodríguez acudió a la ASUME el 11 de julio de 2022, y presentó una petición de pensión alimentaria[11].

Años más tarde, el **22 de febrero de 2024**, la señora Rodríguez solicitó al tribunal la custodia monoparental y el establecimiento de una pensión alimentaria a favor de los menores. Indicó que la custodia compartida no operaba desde hacía aproximadamente un año y que el señor Orengo tampoco aportaba pensión alimentaria alguna. También, suplicó un referido ante la Examinadora de Pensiones Alimentarias (EPA)[12].

El 21 de marzo de 2024, el tribunal refirió el caso a la EPA y ordenó a la Oficina de Relaciones de Familia del tribunal y a las agencias públicas y privadas pertinentes a realizar un estudio social sobre la custodia de los menores[13].

---

[8] *Véase*, apéndice del recurso, a las págs. 54-56.

[9] *Íd.*, a las págs. 57-61.

[10] *Véase*, SUMAC, entrada 46.

[11] *Véase*, apéndice del recurso, a las págs. 62-63.

[12] *Íd.*, a las págs. 65-66.

[13] *Véase*, SUMAC, entradas 50 y 51; también, apéndice del recurso, a la pág. 69.

Con la investigación en curso y previo a una vista de revisión ante la EPA[14], el 27 de mayo de 2024, la señora Rodríguez solicitó al tribunal la imposición de desacato al señor Orengo por presunto incumplimiento con el pago de pensión alimentaria desde abril de 2022, entre otras obligaciones monetarias adeudadas a los menores[15].

Mediante su *Orden* notificada el 28 de mayo de 2024, el foro primario concedió al peticionario hasta el 7 de junio de 2024, para exponer su posición y para emitir el pago de la pensión adeudada; ello, so pena de desacato[16].

El 4 de junio de 2024, y tras varias incidencias procesales, tanto en el foro judicial como administrativo, la ASUME desestimó la petición de pensión alimentaria presentada por la señora Rodríguez en el caso 0595232; ello, ante la existencia de un trámite judicial activo. Así pues, el proceso continuó ante el tribunal[17].

El 6 de junio de 2024, el señor Orengo presentó su escrito en cumplimiento de la orden del 27 de mayo[18]. En síntesis, apuntó que había obtenido una certificación de la ASUME[19], que reflejaba la inexistencia de deuda alguna en el caso 0595232. Entre otras cosas, el peticionario también negó la supuesta deuda de al menos $5,000.00, que le atribuía la señora Rodríguez.

---

[14] *Véase*, apéndice del recurso, a las págs. 123-124. El 24 de abril de 2024, las partes acordaron una transferencia de la vista de estatus para el 3 de julio de 2024.

[15] *Íd.*, a las págs. 126-127. La parte recurrida indicó que, al 27 de mayo de 2024, el padre adeudaba 25 mensualidades, más el 50% de los gastos de los menores; deuda que estimó en al menos $5,000.00. Como excepción, mencionó que, el 13 de mayo de 2024, el peticionario había realizado un pago de $53.00, el cual fue acreditado al 50% de la cuota escolar de uno de los menores.

[16] *Véase*, SUMAC, entrada 68. Según el archivo electrónico en SUMAC, a la entrada 67, la *Moción en solicitud de imposición de desacato* fue presentada por la parte recurrida el 27 de mayo de 2024. Al día siguiente, el tribunal emitió su *Orden* con fecha de expedición de 24 de mayo de 2024, y notificación del 28 de mayo de 2024.

[17] *Véase*, apéndice del recurso, a las págs. 84-85, y 120-122. En la pág. 122, obra una certificación del 2024, que indica que el señor Orengo no tenía la obligación de pagar pensión alimentaria a través de la ASUME. También, esta certificación negativa refleja que el último pago realizado por el señor Orengo ante la ASUME fue el 6 de junio de 2022.

[18] *Véase*, apéndice del recurso, a las págs. 87-90.

[19] *Íd.,* nota al calce número 15.

Luego de presentado un acuerdo transaccional entre las partes[20], el tribunal dictó una *Resolución* el 18 de julio de 2024, acogió el acuerdo y fijó una **pensión alimentaria provisional** al peticionario de $375.00 mensuales, para gastos de vivienda y escuela de los menores, a ser pagados desde el mes de julio de 2024. También, el tribunal dispuso que la madre y el padre coordinarían el periodo del regreso a la escuela de los menores y la cobertura de los gastos sería asumida por mitad entre ambos progenitores. Esta *Resolución* fue notificada el **22 de julio de 2024**[21].

Luego de varios trámites procesales[22], el **3 de octubre de 2024**, notificada el 21 de octubre, el foro primario emitió la *Resolución* recurrida. En ella, determinó que existía una pensión alimentaria de $200.00 mensuales, aún vigente. Además, estableció una deuda retroactiva de $4,160.00, que comprendía el periodo de marzo de 2022, hasta junio de 2024. Para satisfacerla, concedió al señor Orengo un plan de pago de $115.55 mensuales, y ordenó la reapertura del caso 0595232 ante la ASUME, con el fin de que este realizara los pagos ordenados[23].

Inconforme, el 2 de noviembre de 2024, el señor Orengo solicitó que el foro primario reconsiderara su decisión. Apoyó su escrito en extractos de la grabación de la vista oral de divorcio celebrada el 17 de marzo de 2022. El peticionario se remitió a las expresiones de la parte recurrida, hechas bajo juramento, en las que aceptaba, libre de coacciones, la custodia compartida y la distribución, por partes iguales, de la obligación alimentaria de los menores. Insistió en que la pensión alimentaria de $200.00 no se había fijado.

---

[20] *Véase*, SUMAC, entrada 78. El acuerdo transaccional fue presentado el 10 de julio de 2024.

[21] *Véase*, apéndice del recurso, a la pág. 142.

[22] *Véase*, apéndice del recurso, a la pág. 144. Surge de la *Minuta* de la vista del 9 de agosto de 2024, que el tribunal acogió ciertas modificaciones a los acuerdos de relaciones filiales y discutió algunas controversias sobre el informe social. Reseñó que el peticionario había pagado la pensión de $375.00 impuesta el mes anterior. Mientras, la controversia en cuanto a la presunta deuda quedó pendiente de determinación. De hecho, surge de la minuta de otra vista celebrada el 3 de octubre de 2024, que el tribunal resolvería el tema por escrito. *Véase*, SUMAC, entrada 97.

[23] *Véase*, apéndice del recurso, a las págs. 2-4; SUMAC, entrada 101.

El 4 de noviembre de 2024, el foro primario declaró sin lugar la reconsideración solicitada[24]. Esta determinación fue notificada el 7 de noviembre de 2024.

Inconforme aún, el lunes, **9 de diciembre de 2024**, el peticionario presentó este recurso y esbozó los siguientes señalamientos de error:

Primer error:

Erró el Honorable Tribunal de Primera Instancia al determinar la imposición de una pensión alimentaria retroactiva sin que previamente se hubiera fijado tal obligación, en la sentencia de divorcio del 24 de marzo de 2022, la cual estipuló que las partes sufragarían los gastos de los menores por partes iguales.

Segundo error:

Erró el Honorable Tribunal de Primera Instancia al otorgar mayor valor probatorio al testimonio de la parte demandada-apelada, que alegó bajo juramento la existencia de una pensión de $200.00 mensuales, sobre el texto expreso de la sentencia de divorcio la cual es final, firme, que no fue apelada ni revocada, y que goza de la presunción de corrección que no fue re[b]atida.

Tercer error:

Erró el Honorable Tribunal de Primera Instancia al ordenar el pago de una deuda retroactiva de pensión alimentaria por la cantidad de $4,160.00 sin evidencia de que dicha pensión fuere solicitada, fijada u ordenada en la sentencia de divorcio o en procedimientos posteriores.

(Énfasis y mayúsculas omitidas).

Evaluado el recurso, mediante *Resolución* emitida el 11 de diciembre de 2024, otorgamos a la parte recurrida un término de 10 días, computados a partir de la notificación de la *Resolución*, para mostrar causa y exponer las razones por las cuales este auto no debía ser expedido y la decisión del foro primario revocada. Transcurrido el término concedido, y sin el beneficio de su comparecencia, resolvemos.

II

A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya

---

[24] *Véase*, apéndice del recurso, a las págs. 16-17.

sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service,* 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de

ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

B

"El derecho a reclamar alimentos, como parte del derecho a la vida, tiene profundas raíces constitucionales". *Toro Sotomayor v. Colón Cruz*, 176 DPR 528, 535 (2009). Es un derecho fundamental, "que se acentúa cuando están involucrados los alimentos de menores y que forma parte del poder de *parens patriae* del Estado". *Íd.*

El Tribunal Supremo de Puerto Rico ha sido consecuente al reiterar que "los menores tienen un derecho fundamental a reclamar alimentos, que los casos relacionados con los alimentos de los menores están revestidos del más alto interés público y que en éstos el interés no puede ser otro que el bienestar del menor". *Íd.*

Es decir, la obligación de alimentar no es tan solo un derecho fundamental, sino que también es un imperativo jurídico, que ha sido consagrado en varios de los artículos de nuestro Código Civil. *Martínez v. Rodríguez*, 160 DPR 145, 151-153 (2006)[25]. Así pues, "la obligación del sustento de los menores recae en ambos padres". *Íd.* Dicha "obligación cubre **todo lo que es indispensable al sustento del menor, su habitación, vestido y asistencia médica, entre otros**". *McConnell v. Palau*, 161 DPR 734, 746 (2004)[26]. (Énfasis nuestro).

La política pública en torno a los alimentos de menores de edad se hace efectiva, en parte, por virtud de la Ley Núm. 5 del 30 de diciembre de 1986, según enmendada, *Ley Orgánica de la Administración para el*

---

[25] En *Martínez v. Rodríguez*, 160 DPR 145 (2006), nota al calce número 5, el Tribunal cita los Artículos 153, 143, y 1308 del derogado Código Civil de 1930, sobre la patria potestad y la obligación de alimentar a los hijos no emancipados. En el Código Civil del 2020, legislación aplicable a los hechos ante nuestra consideración, sus equivalentes se encuentran en los Artículos 590, 658 y 520 (31 LPRA sec. 7242, 7541 y 6981, respectivamente). También, la nota al calce alude al Art. 158 del Código Penal de 1974, sobre el incumplimiento de la obligación alimentaria. La codificación vigente en el Código Penal de 2012 lo incluye en su Art. 117 (33 LPRA sec. 5176).

[26] En *McConnell v. Palau*, 161 DPR 764 (2004), nota al calce número 6, el Tribunal cita el Art. 142 del derogado Código Civil de 1930, sobre la definición de alimentos. Su equivalente en el Código Civil del 2020 se encuentra en el Art. 653 (31 LPRA sec. 7531).

*Sustento de Menores*, 8 LPRA sec. 501, *et seq.* (Ley Núm. 5). En lo que respecta a la aludida ley, el Tribunal Supremo ha opinado que:

> [...] Esta pieza legislativa establece la política pública del Estado de crear un procedimiento judicial expedito que permita procurar de los padres, o personas legalmente responsables, que contribuyan a la manutención y el bienestar de sus hijos o dependientes mediante la agilización de los procedimientos administrativos o judiciales para la determinación, recaudación y distribución de pensiones alimentarias. Véase, 8 LPRA sec. 502.

*McConnell v. Palau*, 161 DPR, a la pág. 746.

La Ley Núm. 5, entre otras cosas, dispone sobre el pago por concepto de pensiones alimentarias. A esos efectos, el Art. 19(b) establece que:

> Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas **serán efectivos desde la fecha en la que se presente en el tribunal o en ASUME**, la petición de alimentos o la petición de aumento de pensión alimentaria.

8 LPRA sec. 518(b). (Énfasis nuestro).

En ese sentido, la ley es clara al consignar que el pago de la pensión se retrotrae a la fecha en que se solicite, independientemente de la fecha en que se concretice la notificación a la otra parte. Cabe recalcar que la Ley Núm. 5 se debe interpretar liberalmente, y a favor de los mejores intereses del alimentista. *Ríos v. Narváez*, 163 DPR 611, 622 (2004).

Por último, el Tribunal Supremo ha manifestado que las sentencias de alimentos no constituyen cosa juzgada y siempre estarán sujetas a revisión. *McConnell v. Palau*, 161 DPR, a la pág. 747. En ese sentido, el juzgador deberá asegurarse que lo acordado por las partes es beneficioso para los menores. *Íd.*

C

Es norma reiterada que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de primera instancia. *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Al definir lo que constituye pasión, prejuicio o parcialidad, el Tribunal Supremo ha expresado que:

> Incurre en "pasión, prejuicio o parcialidad" aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.

*Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

La deferencia hacia el foro primario responde a que es el juez sentenciador el que tiene la oportunidad de recibir y apreciar toda la prueba testifical presentada, de escuchar la declaración de los testigos y evaluar su comportamiento. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009).

Sin embargo, la doctrina de deferencia judicial no es de carácter absoluto; se puede intervenir "cuando la apreciación de la prueba no representare el balance más racional, justiciero y jurídico de la totalidad de la prueba". *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

También, se exceptúa de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *Íd.*

III

En el caso ante nuestra consideración, el peticionario, señor Orengo, nos solicita que revoquemos la resolución interlocutoria que concluyó que la pensión alimentaria adeudada era de $200.00 mensuales, y que declaró una deuda de alimentos ascendente a $4,160.00 dólares. La obligación alimentaria y la deuda, declaradas mediante el dictamen, determinan la aportación debida a sus tres hijos, menores de edad, no emancipados.

Al repasar los tres errores que plantea el peticionario, consideramos que procede la consolidación de su discusión. Adelantamos que no le asiste la razón.

Como dicta el derecho anteriormente discutido, el asunto de los alimentos es uno de alta jerarquía. El deber de los progenitores, tenedores

de patria potestad o custodia de sus hijos, menores de edad, es una responsabilidad igualmente elevada. En nuestra realidad jurídica, el alimento y su cuantía están predicados en necesidades que van más allá del pan que va al estómago.

Trasladándonos a los hechos de este caso, según la *Resolución* recurrida, la pensión alimentaria fue establecida en la *Sentencia* de divorcio del 17 de marzo de 2022. Coincidimos con el foro primario en su lectura sobre su vigencia. Nos explicamos.

El peticionario alude recurrentemente a que la imposición de la pensión alimentaria nace de manera provisional en la orden de protección que fuera dictada en contra de la señora Rodríguez, unos meses previos a la *Sentencia* de divorcio[27]. Sobre la pensión alimentaria, el lenguaje que dicha orden de protección utiliza para su vigencia indica:

> […] pagar una pensión alimentaria provisional para los (las) hijos (as) habidos entre sí, **hasta que una Sala Superior del Tribunal de Primera Instancia disponga algo distinto** […][28].

(Énfasis nuestro).

Emitida la *Sentencia* de divorcio el 17 de marzo de 2022, y la orden de protección notificada el 24 de marzo de ese mismo año, la palabra "provisional" no surge del texto de la determinación. El juzgador indica lo siguiente:

> Las partes de epígrafe sufragarán todos los gastos de los menores por partes iguales. Actualmente[,] el demandante consigna una pensión alimentaria para beneficio de los menores en la Administración para el Sustento de Menores (ASUME), bajo el caso número 0595232 por la cantidad de $200.00 mensuales. […]"[29].

Esta determinación no fue objetada oportunamente por ninguna de las partes, aunque entendemos que el peticionario presentó su inquietud al foro primario en torno a un trámite sobre la custodia de los menores, la cual presuntamente la recurrida estaba delegando a otro familiar, y a lo que el

---

[27] *Véase*, nota al calce núm. 4, *ante*.

[28] *Íd.*

[29] *Véase*, nota al calce núm. 8, *ante*.

peticionario se oponía. El foro primario remitió al peticionario a la *Sentencia* de divorcio previamente dictada[30].

La resolución interlocutoria dictada años más tarde, y objeto de revisión en este recurso, se expide luego de un proceso de evaluación llevado ante la ASUME. El peticionario no ha puesto en posición al tribunal de entender si, en efecto, cumple con la custodia compartida y la ayuda económica equitativa, según expresado en la determinación del foro primario. Tampoco ha demostrado que sus contribuciones económicas o de cuidado hacia los menores hayan sido consecuentes. Así las cosas, lo dictado por el tribunal sobre la retroactividad de la deuda nace de un ejercicio valorativo entre esa ausencia de ayuda por el tiempo transcurrido y lo dilucidado en el proceso. Ante la información que surge del expediente, el foro judicial tiene toda la autoridad para auxiliar a los menores de edad desprovistos.

Por último, destacamos que la precitada Ley Núm. 5 expone el momento en que los pagos de pensiones alimentarias son efectivos. Nos indica que la efectividad del pago comienza en la fecha en la que se presente la petición en el tribunal o en la ASUME. El expediente ante nos demuestra trámites realizados por la parte recurrida en enero, febrero y julio del 2022, tanto en el plano administrativo como judicial. Por ende, colegimos que la petición de alimentos queda más que reiterada en este caso, por lo que la retroactividad resulta aplicable.

Por lo tanto, concluimos que los errores apuntados por el señor Orengo no fueron cometidos. En consecuencia, la pensión alimentaria de $200.00 mensuales y la deuda de $4,160.00 declarada por el Tribunal de Primera Instancia se sostienen.

IV

Por los fundamentos expuestos, este Tribunal expide el auto y confirma la determinación del Tribunal de Primera Instancia, Sala Superior de Ponce.

---

[30] *Véase*, nota al calce núm. 9, *ante*.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones